633 F.2d 1172
 Donald FADJO, Plaintiff-Appellant,
v.
Michael COON, Individually, and as Investigator for the
State Attorney for the Eleventh Judicial Circuit
in and for Dade County, Florida, et al.,
Defendants-Appellees.
 No. 79-1813.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit B
 Jan. 9, 1981.
 Joel D. Eaton, Miami, Fla., for plaintiff-appellant.
 Sam Daniels, Mark Hicks, Miami, Fla., Dean & Hartman, Denis Dean, Sr., Miami, Fla., for Coon.
 Shutts & Bowen, Barbara E. Vicevich, Miami, Fla., for Rep. Reliance, No. American & Univ.
 Smathers & Thompson, Paul M. Stokes, Miami, Fla., for Julson & Equifax Services.
 Bradford, Williams, McKay, Kimbrell, Hamann, Jennings & Kniskern, P. A., Reginald L. Williams, R. Benjamin Reid, Louise H. McMurray, Miami, Fla., for Transamerican.
 Appeal from the United States District Court for the Southern District of Florida.
 Before VANCE, HATCHETT and R. LANIER ANDERSON, III, Circuit Judges.
 VANCE, Circuit Judge:
 
 
 1
 Donald Fadjo brought this civil rights suit in district court alleging that the state of Florida, along with a credit investigator and six insurance companies, conspired to abridge his constitutional rights to privacy and freedom of speech. 42 U.S.C. §§ 1983, 1985, and 1988. The district court dismissed for lack of subject matter jurisdiction. Because we find that Fadjo has stated a claim that he was unconstitutionally deprived of his civil rights, we hold that federal jurisdiction exists under 28 U.S.C. § 1343 and remand for a trial on the merits.
 
 
 2
 According to Fadjo's complaint, he was the named beneficiary of six insurance policies insuring the life of Kenneth S. Rawdin issued by appellees American Home Assurance Co., North American Co. for Life & Health Insurance, Transamerica Life Insurance & Annuity Co., University Life Insurance Co., and defendants Sentry Life Insurance Co. and Reliance Insurance Co.[1] On or about May 11, 1975, Rawdin rented a fishing boat that later was found empty and bloodstained. His body was not located. The insurance companies employed appellee Equifax Services, Inc. to investigate Rawdin's disappearance. Equifax assigned that task to appellee William Julson. The state of Florida also began an investigation. The state attorney for the eleventh judicial circuit assigned the investigation to appellee Michael Coon. Coon subpoenaed testimony and documents from Fadjo in conducting the state investigation.[2] According to the complaint, Fadjo was compelled to provide information concerning "the most private details of his life." He offered this information following assurances by Coon that his testimony was absolutely privileged under Florida law and that the contents of his testimony would be revealed to no one.
 
 
 3
 Fadjo alleges, however, that his testimony did not remain confidential. Information gathered by the use of the state's subpoena power was given to Julson who was also allegedly allowed to read Fadjo's transcribed testimony. Julson, in turn, passed along the information received from Coon to the insurance companies. Fadjo alleges that as a result of appellees' actions, he has been forced to move his residence from Dade County, Florida and has been unable to obtain meaningful employment.
 
 
 4
 In dismissing Fadjo's complaint for lack of subject matter jurisdiction, the court below found that Fadjo had failed to present a substantial federal question. Such a finding is appropriate only when the plaintiff's claim is frivolous or clearly foreclosed by prior decisions of the Supreme Court. Hilgeman v. National Insurance Co. of America, 547 F.2d 298, 300 (5th Cir. 1977). As in dismissals for failure to state a claim, a complaint should not be turned out of court "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).
 
 
 5
 To state a claim under section 1983, Fadjo must allege that the appellees "deprived him of a right secured by the 'Constitution and laws' of the United States" and that they did so "under color of any statute, ordinance, regulation custom, or usage of any State...." Adickes v. S. H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). Accord, Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 510 (5th Cir. 1980), rehearing denied, 622 F.2d 1043.
 
 
 6
 Fadjo has alleged the requisite state action on the part of all the defendants in charging them with conspiring to deprive him of his civil rights. " 'To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents,' United States v. Price, 383 U.S. 787, 794 (86 S.Ct. 1152, 1157, 16 L.Ed.2d 267) (1966)." Adickes, supra, 398 U.S. 144, 152, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142. Accord, Sparks v. Duval County Ranch Co., Inc., 604 F.2d 976, 982-83 (5th Cir. 1979) (en banc), cert. denied, 445 U.S. 943, 100 S.Ct. 1339, 63 L.Ed.2d 777 (1980).
 
 
 7
 The question before us, therefore, is whether Fadjo has alleged deprivation of a constitutional right. His primary contention is that the defendants' actions violated his constitutional right to privacy. Recent decisions of the Supreme Court and of this circuit indicate that the right to privacy consists of two interrelated strands: "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." Whalen v. Roe, 429 U.S. 589, 599-600, 97 S.Ct. 869, 876-877, 51 L.Ed.2d 64 (1977). Both strands may be understood as aspects of the protection which the privacy right affords to individual autonomy and identity. See generally, Gerety, Redefining Privacy, 12 Harv.Civ.Rts.-Civ.Lib.L.Rev. 233 (1977). The first strand, however, described by this circuit as "the right to confidentiality," Plante v. Gonzalez, 575 F.2d 1119, 1132 (5th Cir. 1978), cert. denied, 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979), is broader in some respects.
 
 
 8
 The privacy right has been held to protect decisionmaking when the decision in question relates to matters such as "marriage, procreation, contraception, family relationships, and child rearing and education." Whalen, supra, 429 U.S. 589, 600 n.26, 97 S.Ct. 869, 877 n.26, 51 L.Ed.2d 64, quoting Paul v. Davis, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). Matters falling outside the scope of the decisionmaking branch of the privacy right may yet implicate the individual's interest in nondisclosure or confidentiality. See, e. g., DuPlantier v. United States, 606 F.2d 654, 669-71 (5th Cir. 1979), rehearing denied, 608 F.2d 1373, and Plante v. Gonzalez, 575 F.2d 1119, 1132 (5th Cir. 1978) (finding that financial disclosure laws raised issues within the scope of the confidentiality branch of the privacy right although they did not impinge on protected decisionmaking). See also Nixon v. Administrator of General Services, 433 U.S. 425, 455, 97 S.Ct. 2777, 2796, 53 L.Ed.2d 867 (1977) (discussing the privacy interest in avoiding disclosure of personal matters including personal finances to archivists screening presidential papers).
 
 
 9
 Fadjo clearly states a claim under the confidentiality branch of the privacy right. He does not claim that the state lacked authority to obtain personal information from him while pursuing a criminal investigation. However, even if the information was properly obtained, the state may have invaded Fadjo's privacy in revealing it to Julson and the insurance companies. Alternatively, although the state could compel Fadjo's testimony it could delve into his privacy only in pursuit of aims recognized as legitimate and proper. Implicit in both formulations of the complaint is the allegation that no legitimate state purpose existed sufficient to outweigh the invasion into Fadjo's privacy.[3]
 
 
 10
 In deciding upon the merits of Fadjo's case, the district court must balance the invasion of privacy alleged by Fadjo against any legitimate interests proven by the state. This court noted in Plante, supra, that where the privacy right is invoked to protect confidentiality, a balancing standard is appropriate as opposed to the compelling state interest analysis involved when autonomy of decisionmaking is at issue. 575 F.2d at 1134. The court pointed out, however, that because a constitutional right is at stake, "more than mere rationality must be demonstrated" to justify a state intrusion. Id. Both the Supreme Court and this circuit have upheld state actions impinging on individual interests in confidentiality only after careful analysis. In Nixon, supra, the Court balanced the ex-president's privacy interest in some of his presidential papers against the public interest in the archival materials. The Court noted the limited nature of the intrusion, Nixon's status as a public figure, the impossibility of segregating personal papers from the mass of public documents by any other means, and the magnitude of the public interest and found that the right to privacy was not violated. 433 U.S. at 465, 97 S.Ct. at 2801. Similarly, in Whalen, supra, in analyzing New York's prescription reporting requirements, the Court distinguished the disclosure to state employees under a duty of confidentiality from disclosure to the public and found that in view of extensive security requirements chances of public disclosure were minimal. This court, in Plante and DuPlantier, supra, upheld financial disclosure laws for elected officials and judges only after surveying the variety of public interests involved and after noting that public figures have a reduced expectation of privacy. An intrusion into the interest in avoiding disclosure of personal information will thus only be upheld when the government demonstrates a legitimate state interest which is found to outweigh the threat to the plaintiff's privacy interest.
 
 
 11
 Appellees urge us to uphold the district court's dismissal on the basis of Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), rehearing denied, 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811. In that case, in a brief discussion at the end of a lengthy opinion dealing with other issues, the Court found that the publication of "an official act such as an arrest" was not a violation of privacy. Id. at 713, 96 S.Ct. at 1166. We note first that Fadjo's case is distinguishable from Paul since it involves the revelation of intimate information obtained under a pledge of confidentiality rather than the dissemination of official information. We believe, moreover, that Paul must be read in light of subsequent Supreme Court cases such as Whalen and Nixon where the privacy interest in confidentiality was found to extend beyond the "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education" noted in Paul. Indeed, as stated above, the Court in Whalen found that this statement in Paul described the areas in which the courts will protect autonomy of decisionmaking rather than confidentiality of information.[4] Whalen, supra, 429 U.S. 589, 600 n.26, 97 S.Ct. 869, 876-877 n.26, 51 L.Ed.2d 64.
 
 
 12
 Appellees rely on Tosh v. Buddies Supermarkets, Inc., 482 F.2d 329 (5th Cir. 1973). The allegations of Fadjo's complaint, however, suggest that his case may be distinguishable from Tosh. Like Paul, Tosh involved the release of an official arrest record. The release of even this record, moreover, was found not to "constitute a deprivation of rights actionable under § 1983" because the court found a legitimate state purpose in the limited dissemination of the information. Id. at 332. In this case, Fadjo argues that no legitimate state purpose capable of outweighing his privacy interest justified divulging his testimony to Julson and the insurance companies.
 
 
 13
 Fadjo has alleged violations of his first amendment rights as well as of his privacy rights. We believe, however, that his first amendment argument is substantially subsumed under his privacy claim. Dismissal of his complaint must be reversed.
 
 
 14
 REVERSED and REMANDED.
 
 
 
 [1]
 Sentry and Reliance are not parties to this appeal because they have settled with Fadjo
 
 
 [2]
 Appellees argue that under Florida law an investigative subpoena compels only attendance and not testimony if the state attorney does not grant use immunity. Tsavaris v. Scruggs, 360 So.2d 745, 749 (Fla.1977); State v. Kitchen, 353 So.2d 897, 898 (Fla.App.1977), cert. denied, Kitchen v. State, 359 So.2d 1216 (Fla.1978). These cases dealt with claims that defendants should be immunized because of information provided to prosecutors. However, absent a claim of fifth amendment privilege a state attorney may indeed compel answers to his questions and a witness may be held in contempt of court for refusing to testify. Collier v. Baker, 155 Fla. 425, 20 So.2d 652 (1945). Fadjo does not allege that the testimony obtained by Coon incriminated him
 
 
 [3]
 Appellees contend that testimony obtained by the state during a criminal investigation was a matter of public record under Florida law and that therefore no privacy violation could be involved in distributing such information. They rely on the decision of the Florida Supreme Court in Wait v. Florida Power & Light Co., 372 So.2d 420 (Fla.1979) which held that the Florida Public Records Statute exempts from public disclosure only those public records that are made confidential by statute. This holding apparently altered sharply common expectations of privacy concerning investigations conducted by a state attorney. See Widener v. Croft, 184 So.2d 444 (Fla.App.1966) (testimony of a witness before a court's prosecuting attorney is privileged as is the testimony of a witness before a grand jury). Following the decision in Wait, the Florida legislature quickly amended the Public Records Act to exempt from public disclosure "active criminal investigative information" and "criminal investigative information received by a criminal justice agency prior to January 25, 1979 ...." Fla.Stat.Ann. § 119.07(2)(c) & (i). Whatever the retroactive impact of Wait upon Florida law, it is clear that the legislature cannot authorize by statute an unconstitutional invasion of privacy. Any reliance upon Wait is therefore misplaced
 
 
 [4]
 Professor Tribe has commented: "If the Court's denial that Paul v. Davis involved any substantively protected interest had been truly authoritative, the Court's careful canvassing of the procedural safeguards provided by New York to the patients whose drug prescriptions were retained for five years in computer banks would have been quite unnecessary in Whalen v. Roe...." L. Tribe, American Constitutional Law, 971 (1978)