

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

October 22, 1992

Honorable Parker McCullough
Chairman
Committee on Criminal Jurisprudence
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-176

Re: Whether a question on a driver's license renewal form inquiring as to whether the applicant has had problems with alcohol or drug abuse is valid   (RQ-90)

Dear Representative McCullough:

Your predecessor requested an opinion regarding a question on a new Texas Department of Public Safety (the "department") form for the renewal of a driver's license which he stated provides as follows:

> Have you ever had a problem, been arrested or hospitalized
> as a direct result of alcohol or drug abuse within the past: [ ] one
> year if applying for Class C License? [ ] two years if applying for
> Class A or Class B License?

He asked whether the renewal form question violates the fifth or fourteenth amendment of the United States Constitution. We do not think it necessary here to fully reach the constitutional issues raised because we conclude that the question on the renewal form is an unreasonable exercise of the department's powers under the applicable state statutes. In our opinion, the renewal form question thus exceeds the department's statutory authority and is consequently invalid. *See, e.g., Gulf Land Co. v. Atlantic Ref. Co.*, 131 S.W.2d 73 (Tex. 1939) (agency actions must be reasonable and within statutory authority).

In a brief submitted to this office, the department asserts that it is required to ask renewal applicants about possible alcohol or drug abuse by the provisions of article 6687b, V.T.C.S. Section 4 of that article provides that the department shall

not issue any license to "any person who is shown to be addicted to the use of alcohol or a controlled substance or other drugs that render a person incapable of driving." V.T.C.S. art. 6687b, § 4(4). Other provisions of section 4 direct the department not to issue a license to a person when the department believes that the person cannot safely operate a motor vehicle. *See id.* § 4(7), (8). Section 6, in setting forth the information which the department is authorized to obtain on applications for an original or renewal driver's license, includes therein "other information as the Department may require to determine the applicant's identity, competency and eligibility." *Id.* § 6(b).

The department is assisted in determining whether an applicant is capable of safely operating a motor vehicle by a Medical Advisory Board established pursuant to article 6687b, section 21A, V.T.C.S. The department contends that the question at issue conforms with the Medical Advisory Board's guidelines for determining driver limitations. We note, too, that section 6 of the article provides that "[i]nformation about the medical history of an applicant supplied to the Department or a Medical Advisory Board is for the confidential use of the Department or the Board and may not be divulged to any person or used as evidence in a legal proceeding except a proceeding [to cancel, suspend or revoke a license.]" *Id.; see also id.* § 21A(e)(1), (2).

The renewal form question, as written, does not, in our opinion, reasonably serve the purposes of the statutory provisions the department invokes as authorization for such a question. For instance, even an attempted truthful response to the question whether the applicant has "had a problem" with alcohol or drug abuse would, we believe, be so subjective as to be virtually useless in the department's evaluation of whether the applicant is in fact "addicted" to alcohol or drugs under section 4(4) *supra*, or whether the person can safely operate a motor vehicle under section 4(7) or (8). Moreover, the unreliability of such responses would, we think, be grossly compounded by the obvious disincentive for respondents who have in fact had something that could be characterized as a "problem" with drugs or alcohol even to attempt to respond to the question truthfully. Those applicants would certainly be aware that such a response would threaten their retaining of their driving privileges.

While, again, we do not think it necessary here to fully reach the constitutional issues raised with respect to the renewal form question, in considering whether the question is a reasonable exercise of the department's authority under

the applicable statutes we bear in mind the sensitiveness and intrusiveness of such question *vis a vis* constitutional privacy concerns.  One's health and medical history generally falls within the scope of federal constitutional privacy protections. *Whalen v. Roe*, 429 U.S. 589, 600-01 (1977).  Constitutional privacy concerns are implicated even where, as here, the government has provided for maintaining the confidentiality of the private matters of which it seeks disclosure, *Id.*  The United States Court of Appeals for the Fifth Circuit has utilized a balancing test of the respective interests of the individual and the state in order to assess the state's right to thus encroach in such areas. Under such a test, "'more than mere rationality must be demonstrated' to justify a state intrusion." *Fadjo v. Coon*, 633 F.2d 1172, 1176 (5th Cir. 1981) (citing *Plante v. Gonzalez*, 575 F.2d 1119, 1134 (5th Cir. 1978)), *cert. denied*, 439 U.S. 1129 (1979).  Presumably, whether the challenged state intrusion was narrowly tailored to serve the state's interest, would be given weight in a court's arriving at a determination.[1]

Because of the vagueness of the renewal form question and its highly questionable efficacy in furthering the authorized purposes of the department, and particularly in view of the constitutionally protected interests which that question implicates, we conclude that the department's utilization of the question as written is unreasonable and hence invalid.

## S U M M A R Y

A question used by the Department of Public Safety on the
driver's licence renewal form, which asks, *inter alia*, whether the

---

[1]We note that the federal appellate courts appear to be divided over the proper standard to be applied where the right to privacy is invoked to protect confidentiality. *See Shields v. Burge*, 874 F.2d 1201, 1210-11 (7th Cir. 1989) (citing conflicting cases); *Borucki v. Ryan*, 827 F.2d 836, 845-48 (1st Cir. 1987) (same). We note in addition, however, that Texas courts may conclude in some instances that privacy rights guaranteed under the Texas Constitution are broader than analogous rights guaranteed under the federal constitution. *See, e.g., Texas State Employees Union v. Texas Dep't. of Mental Health & Mental Retardation*, 746 S.W.2d 203 (Tex. 1987) (implying that the right to privacy under the Texas Constitution may be broader than the right to privacy under the United States Constitution and explicitly adopting as an element of the state test whether less intrusive means were available to serve the state's interest in encroaching on private matters); *see also Texas v. Morales*, (Tex. App--Austin 1992, writ granted) (holding that the right to privacy under the Texas Constitution extends to private, consensual, adult homosexual conduct).

p. 923

applicant had had a "problem" with alcohol or drug abuse, is unreasonable and therefore invalid.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by William Walker
Assistant Attorney General