**Joel R. GAFF, Plaintiff-Appellant,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, et al., Defendants-Appellees.**

No. 86–1119.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 20, 1987.

Decided Sept. 14, 1987.

Stuart D. Hubbell, Traverse City, Mich., J.B. Donaldson (argued), Dykema, Gossett, Spencer, Goodnow & Trigg, Bloomfield Hills, Mich., for plaintiff-appellant.

Larry C. Willey, Grand Rapids, Mich., Stephen Novack (argued), Novack & Macey, Chicago, Ill., Kenneth S. Schlesinger, Richard A. Rossman (argued), Mark W.

Yonkman, Detroit, Mich., for defendants-appellees.

Lawrence G. Campbell, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., R.A. Wilhelm, for Pearce.

Before ENGEL and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.

On Petition for Rehearing.

CONTIE, Senior Circuit Judge.

Plaintiff Joel R. Gaff, a shareholder of a now insolvent banking institution, brought suit against the institution and two of its officers. In amended Count V of his complaint, Gaff sought to assert three sets of claims in his individual capacity as a shareholder: (1) federal claims arising under the federal banking laws; (2) federal claims arising under the federal securities laws; and (3) pendent state law claims. The district court dismissed amended Count V in its entirety and Gaff appealed to this court. In an opinion reported at 814 F.2d 311 (6th Cir.1987), we affirmed in part and reversed in part the judgment of the district court. In Parts II and III of our opinion, we upheld the district court's dismissal of Gaff's federal claims on the ground that Gaff lacked standing to maintain direct causes of action under the federal banking and securities provisions. In Part IV, we reversed the dismissal of the state law claims on the ground that the court should not have exercised pendent jurisdiction over those claims. We premised this latter holding on the general principle set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), that district courts should ordinarily refrain from exercising jurisdiction over pendent state law claims when the federal claims to which the state claims are pendent are dismissed before trial. Accordingly, we ordered that the state claims be remanded to the district court for the purpose of remanding them to the state court from which they had been removed. The defendants have petitioned for rehearing as to Part IV of our opinion. That petition is granted and, for the reasons which follow,

we conclude that the district court properly retained jurisdiction over the state law claims but improperly dismissed them. We therefore find it necessary to remand those claims for further consideration on their merits.

### I.

Because the petition for rehearing is limited to Part IV of our opinion, we will focus primarily on the factual background pertinent to Part IV, namely, the circumstances surrounding the state law claims asserted by Gaff. Gaff and another plaintiff[1] filed a consolidated complaint in state court setting forth five counts. Counts I–IV contained shareholder derivative actions while Count V purported to be a shareholders' class action brought directly by Gaff as representative of a class of persons owning stock in the National Bank and Trust Company of Traverse City (NBT). In Count V, Gaff alleged that two of NBT's officers, David Pearce and Bruce Mann, had breached their fiduciary duty owed to NBT's shareholders when they engineered several stock transactions intended to insulate their positions in and control over NBT. Gaff alleged that false and misleading materials were distributed to shareholders as part of those transactions and that the transactions resulted in violation of the shareholders' suffrage rights. For relief, Gaff sought: (1) a declaratory judgment that Pearce and Mann breached their fiduciary duty; (2) a declaratory judgment that the preemptive rights of the shareholders were violated; (3) an award of damages "in such amount as the court shall deem appropriate"; (4) an accounting to determine the amount of damages sustained by the shareholders in the value of their stock; and (5) other relief deemed appropriate.

After NBT was declared insolvent, the Federal Deposit Insurance Corporation (FDIC) was appointed receiver and removed the consolidated action to federal district court. The FDIC in its corporate capacity then moved to intervene in the case, dismiss Gaff as a party plaintiff, and

---

**1.** The other plaintiff is not a party to the instant    appeal.

stay the proceedings. Defendants Pearce and Mann subsequently moved to dismiss Count V of Gaff's complaint on the ground that it was merely a derivative action for injuries sustained by NBT, as opposed to a direct shareholder action for injuries sustained personally by the individual shareholders.

The district court granted the FDIC's motion to intervene but denied the motions to dismiss. Instead, the court stayed the derivative counts of Gaff's action, Counts I–IV, thus enabling the FDIC to pursue without interference the actions on behalf of NBT while still retaining Gaff as a party pending resolution of the claims. Instead of dismissing Count V, the court granted Gaff leave to amend that count.

Gaff subsequently filed his amended Count V, in which he raised for the first time allegations that Pearce and Mann violated federal banking and securities laws. Gaff also reasserted his state law claims, alleging that certain conduct of Pearce and Mann: "(i) constituted a breach of their fiduciary duty to the stockholders (ii) constituted fraud, deceit and misrepresentation [and] (iii) constituted a violation of the corporate suffrage rights of the stockholders." For relief, Gaff sought essentially the same declaratory and monetary awards requested previously.

Defendants Pearce and Mann again moved to dismiss Gaff's amended Count V for failure to state a claim upon which relief could be granted. Defendants argued, as they had before, that the claims asserted in Count V were merely derivative in nature and were not maintainable by a shareholder as a direct cause of action. Defendants premised their argument on the lack of allegations of personal injury to Gaff, as distinguished from harm to the corporate entity.

The district court initially denied the motion to dismiss but upon reconsideration granted the motion on the ground that Gaff lacked standing to assert the claims in a direct cause of action. The court primarily focused on the claims arising under the federal banking acts and the standing provisions of those acts, particularly § 53 of the National Bank Act, 12 U.S.C. § 93. Applying Sixth Circuit precedent, the court concluded that shareholders may bring direct causes of action under § 93 but only if they have sustained a personal, direct injury separate and distinct from injuries occurring to the corporate entity as a whole. The court found that the only injury alleged by Gaff with respect to the alleged violations of the banking laws was the diminution in the value of his stock and that such injury represented direct harm only to the corporation itself; consequently, the harm to Gaff was derivative in nature. Since Gaff had failed to allege sufficient direct injury, the court held that he had no standing to bring his federal banking claims under § 93.

The court also found that Gaff lacked standing to pursue his federal securities claims because he had not alleged sufficient personal injury. The court observed that a violation of the securities laws causes personal injury to an individual only if that individual purchases or sells stock in connection with the violation. Since Gaff had done neither, he lacked the requisite standing to bring a personal action for violation of the federal securities laws.

The court did not expressly address Gaff's pendent state law claims. However, since the court dismissed amended Count V in its entirety, it necessarily exercised jurisdiction over the state claims and dismissed them, along with the federal claims, with prejudice.

Gaff pursued a timely appeal to this court which we initially resolved by our decision filed on March 20, 1987. We first addressed the district court's rejection of Gaff's federal banking law claims and, upon concluding that Gaff had alleged insufficient personal injury to provide him with standing under 12 U.S.C. § 93, we upheld the dismissal of those claims. 814 F.2d at 315–18. We recognized that § 93 enables a shareholder of a national bank to bring a direct cause of action against the bank's directors "under proper circumstances." *Id.* at 316. We interpreted those circumstances to arise only when the violation of the federal banking laws

causes direct or personal injury to the shareholder. Thus, even when a director violates the federal banking laws, a shareholder lacks standing to maintain a direct action to redress that violation unless the shareholder has suffered some direct injury distinct from injuries suffered by the corporation. Upon examination of Gaff's complaint, we agreed with the district court that he had not alleged sufficient personal injury to sustain his direct cause of action under § 93. Gaff primarily claimed that defendants' conduct caused his stock in NBT to become worthless, which is the equivalent of claiming that their conduct resulted in a diminution in the value of the corporation's assets. We held "that damages resulting from directors' misconduct which merely consist of the diminishment or destruction of the value of corporate stock do not qualify as a direct or personal injury to a shareholder and therefore will not support a direct cause of action under § 93." *Id.* at 318.

We also upheld the district court's dismissal of Gaff's federal securities law claims for lack of standing. We held that a plaintiff asserting a damages claim based on a violation of the federal securities laws must be either a purchaser or seller of securities in connection with the alleged violation and, finding that plaintiff was neither, we concluded that he lacked standing to redress any securities law violation. *Id.* at 318–19.

We lastly addressed the district court's dismissal of Gaff's pendent state law claims and ultimately held that the court erred in dismissing those claims. We noted that in order to have dismissed the claims with prejudice, the court had to have exercised pendent jurisdiction over the claims. Mindful of the Supreme Court's pronouncements in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), however, we concluded that once the district court dismissed the federal claims in Count V it should have declined to exercise jurisdiction over the pendent state claims. *Id.* at 319. Since we were not provided with a sufficient reason to depart from the general rule of *Gibbs* disfavoring the exercise of pendent jurisdiction when the related federal claims are dismissed before trial, we reversed the district court and remanded with instructions to remand the state claims to state court. It is this conclusion and remand order which we now reconsider.

## II.

The FDIC in its brief supporting its petition for rehearing, asserts that the district court properly exercised jurisdiction over Gaff's state claims and, once doing so, correctly dismissed the claims on their merits. The FDIC raises several grounds for the first proposition, which we consider below. Although the district court did not expressly address either of these propositions or the arguments asserted by the FDIC, this does not necessarily preclude our consideration of the FDIC's arguments. It is well settled that when a trial court reaches the correct result the appellate court may properly affirm on any ground, even one not relied on by the lower court. *See Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 157–58, 82 L.Ed. 224 (1947); *City of Cleveland v. Cleveland Electric Illuminating Co.*, 570 F.2d 123, 128 (6th Cir. 1978). Thus, if we are persuaded by any one of the grounds asserted by the FDIC, we will affirm the district court's exercise of jurisdiction over and dismissal of the state claims.

### A. Exercise of Jurisdiction

The FDIC presents several different theories for holding that the district court properly exercised jurisdiction over the state law claims. The FDIC first argues that the court had an independent basis for exercising jurisdiction over the claims pursuant to 28 U.S.C. § 1348. Section 1348 provides that "district courts shall have original jurisdiction of ... any civil action to wind up the affairs of any [national banking] association." The FDIC interprets this provision as granting jurisdiction over any civil action which "affects the liquidation of an insolvent national bank." *Stevens v. Lowder*, 643 F.2d 1078 (5th Cir. Unit B Apr. 1981) (per curiam). Since NBT

is now insolvent, and Gaff's prosecution of his state claims would arguably affect the liquidation of NBT's assets, the FDIC concludes that Gaff's claims fall within the scope of § 1348.

■ We disagree. Gaff's state claims do not present an action for winding up the affairs of NBT, as required by § 1348. Instead, the claims seek to redress injuries allegedly resulting from actions taken by several of NBT's officers prior to NBT's insolvency. As such, the claims are wholly unrelated to NBT's liquidation, or transactions arising from it, and therefore do not constitute an action under § 1348. *See Connolly v. First Nat'l Bank*, 86 F.2d 683 (6th Cir.1936) (where transactions constituting the basis of the action occurred prior to bank's insolvency and appointment of receiver, action bore no analogy to case for winding up affairs of a national bank), *cert. denied*, 301 U.S. 692, 57 S.Ct. 795, 81 L.Ed. 1348 (1937). *Cf. Lucking v. First Nat'l Bank*, 142 F.2d 528 (6th Cir.) (shareholder class action growing out of sale of assets of insolvent national bank constituted an action for winding up the affairs of the bank), *cert. denied*, 323 U.S. 740, 65 S.Ct. 61, 89 L.Ed. 593 (1944); *Dinan v. First Nat'l Bank*, 117 F.2d 459 (6th Cir.1941) (action was based on a default which occurred after the bank's insolvency and therefore was an action for winding up the affairs of a national bank), *cert. dismissed*, 315 U.S. 824, 62 S.Ct. 622, 86 L.Ed. 1220 (1942).

Furthermore, the case relied upon by the FDIC in urging us to reach the opposite conclusion is inapposite. In *Stevens v. Lowder*, 643 F.2d 1078 (5th Cir. Unit B Apr. 1981) (per curiam), shareholders of an insolvent bank brought a damages action against purchasers of the insolvent bank's assets based on charges of fraud, breach of confidential relationship, and conspiracy in connection with the purchase. One of the questions on appeal was whether the district court had jurisdiction over the action pursuant to § 1348. The Fifth Circuit initially stated that it would "look to the entire transaction in question ... to see if the civil action affect[ed] the liquidation of

[the] insolvent bank." *Id.* at 1079 (citations omitted). The court then reached the following conclusions:

> Plaintiffs' claim that defendants committed fraud in connection with the purchase of [the insolvent bank's] assets is properly within the scope of winding up the affairs of the bank. Viewing defendants' activities in relation to [the bank] as a whole, the district court correctly held that this action arises out of [the bank's] insolvency and the purchase and assumption of [the bank's] assets and liabilities by defendants' bank. As such, this is an action to wind up the affairs of a national banking association, and the district court properly exercised its jurisdiction upon removal.

*Id.* at 1080 (citation omitted). The circumstances of the present appeal are clearly distinguishable from those in *Stevens*, inasmuch as the activities which comprise the basis for Gaff's claims transpired before NBT's insolvency and did not occur in connection with any liquidation of NBT or sale of its assets. As a result, Gaff's claims did not "arise out of" NBT's insolvency. We believe, as shown in *Stevens*, that this is the pertinent inquiry for determining whether a specific case is an action to wind up the affairs of an insolvent national bank. Since Gaff's claims do not arise out of NBT's insolvency, the district court could not have exercised jurisdiction over the claims pursuant to § 1348.

The FDIC's second argument is that Gaff's state claims are pendent to either or both of (1) the derivative counts of Gaff's complaint which the district court is holding in abeyance, or (2) the FDIC's claims. The FDIC observes that both sets of claims are currently pending before the district court, contends that both sets of claims arise out of the same common nucleus of operative fact as Gaff's state claims, and concludes that it was proper for the district court to have exercised jurisdiction over the state claims.

■ We find this argument persuasive. As noted in our prior opinion, "[t]he three prerequisites for the existence of pendent jurisdiction are (1) the federal claim must

have substance sufficient to confer subject matter jurisdiction on the court; (2) the state and federal claims must derive from a common nucleus of operative fact; and (3) the plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding." *Transcontinental Leasing, Inc. v. Michigan Nat'l Bank*, 738 F.2d 163, 165–66 (6th Cir.1984). We originally found that the first prerequisite was not satisfied since the federal claims asserted in amended Count V were dismissed before trial. However, upon reconsideration we hold that the first prerequisite is satisfied by the district court's retention of jurisdiction over other related aspects of Gaff's complaint; namely, derivative Counts I through IV. The FDIC removed those counts to federal court pursuant to 12 U.S.C. § 1819 Fourth, which provides in part:

> All suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and the Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court for the district or division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect....

Since the derivative counts are "deemed to arise under the laws of the United States," they are essentially federal claims over which the district court exercised federal jurisdiction. *See In re Franklin Nat'l Bank Securities Litigation*, 532 F.2d 842 (2d Cir.1976). The derivative counts therefore fulfill the requirement of being federal claims with sufficient substance to confer subject matter jurisdiction on the district court.[2] The other prerequisites of pendent jurisdiction are also met, since the state claims and the derivative claims clearly are derived from a common nucleus of operative fact and the claims are of a nature normally expected to be pursued in one judicial proceeding. Accordingly, we conclude that the district court's exercise of pendent jurisdiction was proper.[3]

In light of this conclusion, the general rule of *Gibbs* simply does not come into play. That is, since we have found that the district court did not dismiss all of the federal issues to which Gaff's state claims could be pendent, there is no need to consider whether or not the court needed to follow the general rule favoring dismissal of pendent state claims when all federal claims are dismissed before trial. We therefore decline to address the FDIC's alternative argument that the circumstances of this case warrant departure from the general rule. *See Province v. Cleveland Press Publishing Co.*, 787 F.2d 1047 (6th Cir.1986) (trial courts have some discretion to decide pendent state claims even when the federal claims are dismissed; the courts must balance the interest in avoiding needless decisions of state law with notions of judicial economy).

### B. Dismissal on the Merits

Having concluded that the court properly exercised jurisdiction over the state claims, we must now consider whether the court correctly dismissed those claims. The FDIC argues that it did, relying primarily on the statements in our previous opinion concerning the general corporate law principles that a shareholder has no personal right of action to redress injuries sustained solely by the shareholder's corporation, that diminution in the value of corporate stock constitutes a direct injury only to the corporation, and that a shareholder can only pursue derivatively an action based on a diminution in the value of corporate stock. Applying these principles to Gaff's federal claims, we concluded that he had not alleged any viable damages aside from the decrease in the value of his stock and

---

2. We believe it is not significant for jurisdictional purposes that the district court has stayed amended Counts I through IV, since the court still has jurisdiction over those claims.

3. The same analysis and conclusions are equally applicable with respect to the FDIC's claims currently pending before the district court. *See FDIC v. Otero*, 598 F.2d 627 (1st Cir.1979).

therefore he lacked standing to bring direct causes of action for violations of the federal banking or securities laws. The FDIC urges us to use the same analysis and also conclude that Gaff lacked standing to pursue his state law claims. The FDIC also relies on our rejection of Gaff's allegations that he sustained personal injury by being deprived of preemptive rights.

 On the record before us, we are unable to sustain the dismissal of the state law claims. We noted earlier that the district court did not expressly address the state claims asserted by Gaff, but merely dismissed amended Count V in its entirety. We therefore have no findings on the merits to review. We also have no basis to conclude, as the FDIC does in its petition for reconsideration, that the district court "dismissed the state law claims for the identical reasons that the federal claims were dismissed, namely, lack of standing to sue directly." There are simply no findings supporting this conclusion. Absent such findings, we cannot determine whether Gaff's allegations fail to state a claim under state law which he can pursue as a direct cause of action. One problem preventing us from making such a determination is Gaff's allegations that Pearce and Mann breached their fiduciary duty owed to NBT's minority shareholders, including Gaff. Under Michigan law, directors and officers of a corporation owe a fiduciary duty to the corporation's shareholders. *Berman v. Gerber Products Co.*, 454 F.Supp. 1310, 1319 (W.D.Mich.1978). *See also Ashman v. Miller*, 101 F.2d 85, 90 (6th Cir.1939) (directors owe a fiduciary duty to the corporation and its shareholders); *Pergament v. Frazer*, 93 F.Supp. 13, 21 (E.D. Mich.1950) (controlling shareholders owe fiduciary duty to minority shareholders), *aff'd sub nom. Masterson v. Pergament*, 203 F.2d 315 (6th Cir.), *cert. denied*, 346 U.S. 832, 74 S.Ct. 33, 98 L.Ed. 355 (1953). Furthermore, a breach of this duty "gives rise to a cause of action by the shareholders in their own right." *Borak v. J.I. Case Co.*, 317 F.2d 838, 842 (7th Cir.1963), *aff'd*,

377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). *See also Miller v. Magline, Inc.*, 76 Mich.App. 284, 256 N.W.2d 761 (1977) (director's breach of fiduciary duty owed to shareholders gives rise to court action). In light of these general principles and Gaff's allegations, we find it necessary to remand this case for further proceedings with respect to the state claims asserted in amended Count V. Only after the district court has fully addressed Gaff's allegations and made specific findings with respect to them will we be able to engage in proper review and determine whether Gaff has stated a viable direct cause of action under state law.[4]

Accordingly, we VACATE Part IV of our prior opinion and REMAND the state claims raised in amended Count V for further consideration on their merits.

---

**4.** Of course, this holding does not imply that Gaff's state claims cannot be dismissed before trial. We merely require some analysis and findings at the trial court level before reviewing any possible dismissal.