AXEL JOHNSON, INC., Plaintiff,

v.

ARTHUR ANDERSEN & CO., Defendant
and Third–Party Plaintiff,

v.

INDUSTRIAL TECTONICS, INC., ITI
Holding Corporation, Helmut F. Stern,
Robert A. Gockel, Frederick J. Malecki
and Jim Babcock, Third–Party Defen-
dants.

No. 89 Civ. 6490 (MEL).

United States District Court,
S.D. New York.

March 29, 1994.

Milberg Weiss Bershad Hynes & Lerach, New York City, for plaintiff and third-party defendant Indus. Tectonics, Inc. (Sanford P. Dumain and Deborah Clark–Weintraub, of counsel).

Curtis, Mallet–Prevost, Colt & Mosle, New York City, for defendant and third-party plaintiff (Eliot Lauer, Benard V. Preziosi, Jr., Christoper L. Deininger, and Joseph P. Goldberg, of counsel).

Willkie Farr & Gallagher, New York City, for third-party defendants Helmut F. Stern and ITI Holding Corp. (Brian E. O'Connor and Joanne M. Chormanski, of counsel).

Pinto, Rodgers & Kopf, Morristown, NJ, for third-party defendant Robert A. Gockel (Robert E. Barkus, of counsel).

David G. Trachtenberg, New York City, for third-party defendants Frederick J. Ma-

lecki and James F. Babcock (Leonard Anthony Rodes, of counsel).

LASKER, District Judge.

Third-party defendants Industrial Tectonics, Inc., ITI Holding Corporation, Helmut F. Stern, Robert A. Gockel, Frederick J. Malecki, and James F. Babcock, make various motions to dismiss all or part of the amended third-party complaint of defendant Arthur Andersen & Co.

## I.

This litigation began when Axel Johnson, Inc. ("Johnson") sued Arthur Andersen & Co. ("Andersen"), charging that Andersen knowingly or recklessly conducted inadequate audits of a company known as Industrial Tectonics, Inc. ("ITI"), and that Johnson relied on the audits in acquiring ITI in 1982. Johnson contends that Andersen's conduct violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1981), and constituted negligence and professional malpractice.

Andersen filed a third-party complaint against its former client ITI and ITI Holding (collectively, "ITI"), and four of its officers: Helmut F. Stern, president of ITI; Robert A. Gockel, vice-president, Secretary and Treasurer of ITI; Frederick J. Malecki, Controller of ITI; and James F. Babcock, ITI's Chief Accountant. Andersen contends that the third-party defendants, who were principals of ITI with superior knowledge of the facts and circumstances, knowingly or recklessly failed to disclose to Andersen and to Johnson certain fraudulent practices relating to ITI contracts with the government. In its original third-party complaint, Andersen stated three causes of action: (1) contribution on the 10b–5 claim; (2) indemnification and (3) unjust enrichment.

An earlier Opinion, dated August 19, 1993 ("August 19 Order"), held that (1) Andersen's claim for contribution on 10b–5 would be dismissed unless within 30 days Andersen filed an amended complaint specifying the actions of fraud attributable to each third-party defendant; (2) Andersen's claim for indemnification was dismissed because "no person affiliated with ITI could have as-

sumed responsibility for Anderson's duty to conduct a comprehensive audit"; and (3) Andersen's unjust enrichment claim was dismissed for failure to state a claim. *Axel Johnson, Inc. v. Arthur Andersen & Co.,* 830 F.Supp. 204 (S.D.N.Y.1993).

On September 17, 1993, Anderson amended its third-party complaint, pleading the 10b–5 contribution claim with more specificity as to each defendant and adding two new state law claims. The new Count II seeks contribution on Johnson's negligence and malpractice claims against Andersen for audits of ITI performed after Johnson acquired ITI; the new Count III seeks contribution on the negligence and malpractice claims, asserted by Johnson as assignee of ITI against Andersen, for audits performed before Johnson acquired ITI.

All of the third-party defendants move to dismiss the second and third counts of the amended third-party complaint (hereafter, "Complaint") on the grounds that the August 19 Order permitted Andersen to amend the 10b–5 contribution claim *only,* and that the contribution claims on negligence and professional malpractice are merely the previously-dismissed indemnity claims in disguise.

In response, Andersen moves for leave to amend the Complaint if it is held that the August 19 Order did not permit it to assert new claims.

In addition, three of the third-party defendants also move to dismiss on individual grounds.

Robert A. Gockel moves separately to dismiss the second count on the additional grounds that (1) as an officer of ITI, he owed no duty to Johnson for post-acquisition audits done by Andersen; and (2) he cannot be jointly liable for Andersen's alleged accountant malpractice.

Babcock moves to dismiss the Complaint against him on the grounds that Andersen has again failed to plead securities fraud with sufficient particularity as to him.

ITI moves to dismiss the Complaint against it on the ground that requiring contribution from ITI, a corporation wholly-owned by Johnson, would be against "fairness and equity" because it would reduce the amount which Johnson might collect on its claim against Andersen.

## II.

*Motions to dismiss Counts II and III*

■ All of the third-party defendants move to dismiss the second and third counts of the Complaint on the grounds that (1) Andersen's original state law claims were dismissed without leave to replead; and (2) Andersen's new state law contribution claims are, in reality, recast indemnification claims. Both arguments are without merit.

First, Rule 15(a) of the Federal Rules of Civil Procedure allows one amendment of a complaint as a matter of right "at any time before a responsive pleading is served." None of the third-party defendants has answered Andersen's original complaint, and the August 19 Order dismissing Andersen's indemnification and unjust enrichment claims did not deprive Andersen of its right to one amendment under Rule 15(a).

■ Second, Andersen's amended claims for contribution on the state law causes of action are distinct from its previously-dismissed claims for indemnification. *McDermott v. City of New York,* 50 N.Y.2d 211, 216, 428 N.Y.S.2d 643, 645, 406 N.E.2d 460, 462 (1980) (there is a "fundamental distinction between contribution and indemnity"). Andersen's new state law claims no longer assert that the third-party defendants are vicariously liable for Andersen's negligence and malpractice and should indemnify Andersen in full; rather, the new claims seek contribution from the third-party defendants as joint tort-feasors "in accordance with the relative culpability of the parties" (Complaint ¶¶ 95, 102).

Accordingly, the motions to dismiss the second and third counts of the Complaint are denied.

## III.

*Gockel's motion to dismiss Count II*

■ Robert A. Gockel moves to dismiss the second count of the Complaint on the additional grounds that (1) Gockel owed no

duty to Johnson during the period following Johnson's acquisition of ITI—particularly the duty to "detect and disclose" ITI's defective pricing of certain government contracts, and (2) Andersen has no basis to claim contribution relating to its own malpractice.

Andersen contends that, under the laws of Michigan which is Johnson's state of incorporation, a corporate officer—which Gockel was at the time—owes a duty to the shareholders and that a breach of this duty is actionable by the shareholders in their own right. *Gaff v. Federal Deposit Insurance Corp.*, 828 F.2d 1145, 1149 (6th Cir.1987). Andersen argues that since, at the time in question, Johnson was the sole shareholder of ITI, the allegations that Gockel knew and covered up ITI's fraudulent practices in its government contracts state a breach of duty by Gockel to Johnson, which in turn supports a claim for contribution. Moreover, Andersen argues that under general negligence principles, Gockel is a joint tort-feasor whose actions damaged Johnson and from whom Andersen has a right to contribution.

Gockel does not dispute that under Michigan law a corporate officer owes a duty to shareholders, but claims that even under Michigan law a corporate officer has no duty to "detect and disclose" corporate liability. The proposition is not persuasive. First, even Gockel recognizes that there is a general duty under Michigan law that an officer act "in good faith" and "in the best interests of the corporation." Mich.Stat.Ann. § 21.-200(541a)(1) [M.C.L.A. § 450.1541a(1)] (1989). Thus, Andersen's allegation that Gockel knowingly and recklessly participated in the coverup of fraud in the conduct of ITI's government contracts states a claim for breach of this duty. Second, Andersen's complaint as to Gockel does not merely allege a failure to disclose potential corporate liability, but active participation in the fraud and coverup (Complaint ¶¶ 16–25). Moreover, regardless of whether Gockel owed a fiduciary duty to Johnson, he may be jointly liable to Johnson under general negligence principles if his alleged wrongful conduct is found to have damaged Johnson.

■ Gockel's second ground for dismissing Count II is that he cannot be held liable for

Andersen's malpractice. The gravamen of Johnson's complaint against Andersen, for which Andersen seeks contribution, is that Johnson was damaged by the failure of Andersen's audits to disclose the false information contained in ITI financial statements. Accepting Andersen's allegations against the third-party defendants as true—that they knowingly or recklessly certified to Andersen that the financial information provided by them was accurate when it was not—the third-party defendants are properly charged as joint tort-feasors with Andersen.

Accordingly, Gockel's motion to dismiss the second count of the Complaint as against him is denied.

## IV.

*Babcock's motion to dismiss*

■ James F. Babcock moves to dismiss the entire Complaint against him on the ground that Andersen has again failed "to particularize securities fraud on the part of Babcock."

The Complaint alleges that Babcock, as Chief Accountant of ITI, had a direct and substantial role in the preparation of documents relating to ITI's government contracts which contained false information (Complaint ¶¶ 45–50). Andersen alleges that Babcock knew or recklessly avoided knowing that ITI was not in compliance with federal defective pricing laws relating to its government contracts (Complaint ¶¶ 51–53), and knowingly or recklessly provided false certification that ITI had provided accurate data to the government (Complaint ¶ 52). Andersen also alleges that Babcock knowingly or recklessly failed to disclose the defective pricing liability in certain ITI financial statements and that that failure led to false representations in the Stock Purchase Agreement on which Johnson relied in acquiring ITI (Complaint ¶¶ 73, 82).

Babcock contends that because the alleged misstatements by him were contained in "the most recent, pre-acquisition, annual financial statement of ITI," which was not "specially prepared in connection with the sale of stock to Johnson," Andersen's allegations do not

state a connection between Babcock and the purchase of stock that underlies the securities fraud claim in this case. Moreover, Babcock claims that there is no allegation from which to infer that he "knew that such routine annual financials were to be relied upon by Johnson."

Babcock's argument that his alleged false statements are not actionable under Section 10(b) is without merit. The Supreme Court has held that Section 10(b) "must be read flexibly, not technically and restrictively and that the statute provides a cause of action for any plaintiff who suffers an injury as a result of deceptive practices touching its sale or purchase of securities...." *Santa Fe Industries v. Green,* 430 U.S. 462, 475–76, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977) (quoting *Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 12–13, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971); internal quotations omitted). Johnson's complaint against Andersen alleges that it relied on Andersen's audits of ITI financial statements in connection with its acquisition of ITI; Andersen in turn alleges that it relied on the representations of ITI principals, including Babcock, in conducting the audits. The complaints, taken together, establish a sufficient connection between Babcock's alleged untrue statements and Johnson's purchase of ITI securities to state a claim under Rule 10b–5.

There is simply no merit to Babcock's position that the Complaint lacks any inference that he knew the annual financials would be relied on by Johnson. It is implausible that Babcock was not aware that a potential buyer such as Johnson would reasonably rely on financial statements of the target company just as it would an offering memorandum, or that the information contained in the annual financials would be incorporated or reflected in offering materials.

Babcock also argues that Andersen's Complaint still fails to satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

Andersen answers that since Babcock was a corporate insider, the complaint need not plead specific connections between Babcock and the alleged false statements. *Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986) ("no

specific connection between fraudulent misrepresentations in the Offering Memorandum and particular defendants is necessary where ... defendants are insiders or affiliates participating in the offer of the securities in question").

Babcock responds that the rule relaxing pleading requirements against corporate insiders established in *Luce* only applies to statements contained in an offering memorandum and, therefore, does not apply in this case. The sole authority he cites for this narrow application of *Luce* is this Court's opinion in *In re Time Warner Inc. Securities Litigation,* 794 F.Supp. 1252, 1261 (S.D.N.Y. 1992), which is inapposite. In *Time Warner,* we found that the *Luce* rule did not apply because the alleged misstatements consisted of quotations in press reports attributed to anonymous Time Warner sources, and not because the misstatements were not contained in an offering memorandum. Babcock has not suggested a rational basis for distinguishing an offering memorandum from other materials issued by the seller and foreseeably relied on by the buyer to put this case outside of the *Luce* rule.

In sum, Andersen's amended third-party complaint states a Rule 10b–5 claim against Babcock and gives him fair notice of its claims against him and the grounds upon which they rest. Accordingly, Babcock's motion to dismiss is denied.

### V.

*ITI's motion to dismiss*

■ ITI's motion to dismiss the third-party complaint against it is premised on the argument that contribution from ITI, a corporation wholly-owned by Johnson, would be against "fairness and equity" because it would reduce the amount Johnson might collect on its claim against Andersen. The precise argument was raised in its earlier motion to dismiss and was expressly rejected. 830 F.Supp. at 208–209. ITI's motion is barred by the law of the case and is denied.

ITI's request that paragraphs 54 through 73 of the Complaint be stricken is denied. Andersen has stated a claim for contribution

by alleging that the conduct of the third-party defendants damaged Johnson and the paragraphs objected to are causally related to this claim.

\*    \*    \*

The third-party defendants' motions to dismiss are denied. Andersen's motion to amend its third-party complaint is dismissed as moot. It is so ordered.